**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LORRAINE PAGANO, | |
| Plaintiff, | CIVIL ACTION NO. 3:15-CV-01489 |
| v. | (CAPUTO, J.) |
| | (MEHALCHICK, M.J.) |
| VENTURES TRUST 2013-I-HR, et al., | |
| Defendants. | |

## REPORT AND RECOMMENDATION

This is a *pro se* action for declaratory relief, injunctive relief, and damages asserting a violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617, as well as several state law claims against Defendants Ventures Trust 2013-I-H-R ("Ventures Trust"), BSI Financial Services ("BSI"), Bank of America, N.A. ("BANA"), Mortgage Electronic Registration Services, Inc. ("MERS"), and John or Jane Does 1 through 10. (Doc. 1). All named Defendants have entered an appearance in this matter and filed motions to dismiss Plaintiff Lorraine Pagano's complaint. (Doc. 20 (Ventures Trust and BSI); Doc. 22 (BANA and MERS)). For the following reasons, it is recommended that the motions be granted.

### I. BACKGROUND

Pagano initially filed her fee-paid complaint in this matter with the United States District Court for the Eastern District of Pennsylvania on June 4, 2015. (Doc. 1). The case

was transferred to this Court from the Eastern District on July 31, 2015.[1] (Doc. 18; Doc. 19). Defendants Ventures Trust and BSI filed a new motion to dismiss on August 11, 2015 (Doc. 20), followed by a brief in support thereof on August 17, 2015 (Doc. 24). Defendants BANA and MERS filed a motion to dismiss (Doc. 22) and supporting brief (Doc. 23) of their own on August 13, 2015. To date, Plaintiff has not filed a response to either of these motions. Because Plaintiff failed to timely file a brief in opposition to Defendants' motions to dismiss, she is deemed not to oppose the motions. *See* L.R. 7.6 ("Any party who fails to comply with this rule shall be deemed not to oppose such motion."). Given that the time period for Plaintiff to file a brief in opposition has passed (Doc. 25), the motions are now ripe for disposition.[2]

This litigation concerns a home loan made by Countrywide Home Loans, Inc. ("Countrywide") to Plaintiff in September of 2005 involving real property located at 6431 Laurel Road in Pocono Summit, Pennsylvania (the "Laurel Road Property").[3] (Doc. 1, at ¶¶ 4, 28-29). In return, Plaintiff executed a promissory note (the "Note") in the amount of $204,000.00 and secured by a mortgage (the "Mortgage"), promising to repay the loan. (Doc. 1, at ¶¶ 28-29). The Mortgage was recorded with the Monroe County Recorder of

---

[1] Defendants had previously filed motions to dismiss Plaintiff's complaint with the Eastern District. (Doc. 2; Doc. 9). District Judge Kearney denied those motions to dismiss as moot in his Order transferring the case to this Court. (Doc. 17).

[2] Although Plaintiff did not file a brief in opposition to the instant motions to dismiss, she did file a brief opposing the two earlier motions that were denied by District Judge Kearney as moot. (Doc. 7). In deference to Plaintiff's status as a *pro se* litigant, the Court will consider the arguments raised in her earlier brief. *See Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established.")

[3] The address of the Laurel Road Property appears to have formerly been 226A Woodland Drive, Pocono Summit, Pennsylvania. (Doc. 1, at 38).

Deeds on September 27, 2005, and identified MERS as the nominee for Countrywide. (Doc. 1, at ¶¶ 30-31). Countrywide now ceases to exist, having been purchased by BANA. (Doc. 1, at ¶ 28).

On March 25, 2014, MERS assigned the Mortgage to BANA and an assignment of mortgage was recorded with the Monroe County Recorder of Deeds. (Doc. 1, at ¶ 82). Plaintiff alleges that Mercedes Judilla signed the assignment instrument in her capacity as assistant secretary for MERS without disclosing her employment with BANA. (Doc. 1, at ¶ 83). In part because of this, Plaintiff claims that the assignment was a fraudulent attempt by BANA to conceal ownership of the Note. (Doc. 1, at ¶¶ 86-92). BANA subsequently assigned the Mortgage and Note to OHA Newbury Ventures, LP, as recorded on October 22, 2014. (Doc. 1, at ¶¶ 93-94). Plaintiff contends that this assignment was also fraudulent. (Doc. 1, at ¶ 100). The most recent assignment of the Mortgage, to Ventures Trust, was recorded on April 16, 2015. (Doc. 7, at 16).  Plaintiff acknowledges that Ventures Trust held both the Note and the Mortgage at the time she filed her complaint, and that BSI is the servicer of Plaintiff's loan. (Doc. 1, at ¶¶ 8, 34).

On June 5, 2014, BANA initiated a mortgage foreclosure action in the Court of Common Pleas of Monroe County, alleging that Plaintiff had been in default on her Mortgage payments since November 1, 2013.[4] (Doc. 1, at ¶ 55; Doc. 20-2, at 7-12). Plaintiff

---

[4] In addition to the facts pled in Plaintiff's complaint, this Court may "also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994). Consideration of these materials does not require conversion of a Rule 12(b) motion to dismiss into a Rule 56 motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Accordingly, the Court takes judicial notice of the foreclosure proceedings initiated by BANA in the Monroe County Court of
*(footnote continued on next page)*

failed to enter an appearance in the foreclosure proceeding, and the prothonotary entered a default judgment against her on July 22, 2014. (Doc. 1, at ¶ 162; Doc. 20-2, at 29-30, 35-37, 41-42). A writ of execution was issued on the Laurel Road Property on August 18, 2014 (Doc. 20-2, at 30), and a sheriff's sale was scheduled to take place on or about July 30, 2015 (Doc. 1, at ¶ 44).

Plaintiff now asks this Court to void the entry of default judgment in the Court of Common Pleas, declare that BANA lacked standing to bring the foreclosure action (Count I), and enter an order to quiet title enjoining Defendants from asserting any lien or interest that interferes with Plaintiff's enjoyment of the Laurel Road Property (Count II). (Doc. 1, at ¶¶ 162, 176, 184). Plaintiff also asserts federal RESPA claims against BANA and BSI for accepting unearned fees (Count V), 12 U.S.C. §§ 2601-2617. (Doc. 1, at ¶¶ 197-201). Furthermore, Plaintiff asserts state law claims against all named Defendants for breach of the implied covenant of good faith and fair dealing (Count IV), fraud (Count VI), and breach of contract (Count VII). (Doc. 1, at ¶¶ 191-196, 202-216). Lastly, Plaintiff brings a negligence claim against BANA and BSI (Count III), and a slander of title claim solely against BANA (Count VIII). (Doc. 1, at ¶¶ 185-190, 217-223).

## II. LEGAL STANDARDS

### A. RULE 12(B)(1) MOTION TO DISMISS STANDARD

A motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. *Gould Elecs. Inc. v. United States*, 220 F. 3d 169, 176 (3d Cir. 2000). A defendant asserts a facial challenge

---

Common Pleas. *See Bank of Am., N.A. v. Pagano*, No. 04712-CV-2014 (Monroe Cnty. Ct. Com. Pl. 2014) (docket sheet attached as Doc. 20-2, at 29-30).

"by arguing that the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction." *D.G. v. Somerset Hills Sch. Dist.*, 559 F. Supp. 2d 484, 491 (D.N.J. 2008). The Court therefore "must consider the allegations of the complaint as true" in evaluating a facial challenge to subject matter jurisdiction. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). In a factual attack under Rule 12(b)(1), however, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. Moreover, in evaluating a factual challenge, a court may consider "evidence outside the pleadings to determine if it has jurisdiction." *Gould Elecs. Inc.*, 220 F.3d at 178. "Rule 12(b)(1) motions may be filed at any time and repeatedly, if the movants assert new arguments warranting [the court's] attention." *Fahnestock v. Reeder*, 223 F. Supp. 2d 618, 621 (E.D. Pa. 2002). Furthermore, "[w]hen a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *In re Corestates Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993), *aff'd* 39 F.3d 61 (3d Cir. 1994).

### B.  RULE 12(B)(6) MOTION TO DISMISS STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Although the Court must accept the fact allegations in the

complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court of the United States held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In deciding a Rule 12(b)(6) motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

A document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

## III. DISCUSSION

### A. THE *ROOKER-FELDMAN* DOCTRINE BARS PLAINTIFF'S REQUEST FOR A DECLARATORY JUDGMENT, QUIET TITLE ACTION, AND SLANDER OF TITLE CLAIM

Defendants assert that this Court must dismiss Plaintiff's complaint in its entirety for lack of subject matter jurisdiction pursuant to the *Rooker-Feldmen* doctrine. (Doc. 23, at 3-5; Doc. 24, at 6-10); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923); *Parkview Assocs. Partnership v. City of Lebanon,* 225 F.3d 321, 324 (3d Cir. 2000) ("The *Rooker–Feldman* doctrine is based on the statutory foundation of 28 U.S.C. § 1257 and the well-settled understanding that the Supreme Court of the United States, and not the lower federal courts, has jurisdiction to review a state court decision."). The United States Court of Appeals for the Third Circuit applies a four-part test to determine whether review of an action must be excluded under the *Rooker–Feldman* doctrine: "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state court judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

In regard to the first requirement of the *Rooker-Feldmen* doctrine, this Court finds that Plaintiff lost the state court mortgage foreclosure action due to the default judgment entered by the Monroe County Court of Common Pleas. *See In re Calabria*, 418 B.R. 862, 866 (Bankr. W.D. Pa. 2009) ("*Rooker–Feldman* appl[ies] not only to state court judgments entered following a trial on the merits, but also to default judgments." (citing *In re Knapper*, 407 F.3d 573, 580-81 (3d Cir. 2005))). Moreover, even though "[a]n action in mortgage

foreclosure is strictly an *in rem* proceeding," *N.Y. Guardian Mortg. Corp. v. Dietzel*, 524 A.2d 951, 953 (Pa. Super. Ct. 1987), courts within the Third Circuit consistently hold that *Rooker-Feldmen* bars federal plaintiffs from asserting claims based on harms allegedly caused by state court mortgage foreclosure actions. *See Gage v. Wells Fargo Bank, NA*, 521 F. App'x 49, 50-51 (3d Cir. 2013); *Conklin v. Anthou*, 495 F. App'x 257, 261-62 (3d Cir. 2012); *Laychock v. Wells Fargo Home Mortg.*, 399 F. App'x 716, 718 (3d Cir. 2010); *Moncrief v. Chase Manhattan Mortg. Corp.*, 275 F. App'x 149, 152-53 (3d Cir. 2008); *Ayres-Fountain v. E. Sav. Bank,* 153 F. App'x 91, 92 (3d Cir. 2005); *In re Knapper*, 407 F.3d 573, 582 (3d Cir. 2005); *Cuevas v. Wells Fargo Bank, N.A.*, No. CIV.A. 14-6208 ES MA, 2015 WL 5123746, at *4 (D.N.J. Sept. 1, 2015); *Schroeder v. Bank of Am. Corp.*, No. 3:12-CV-589, 2012 WL 6929272, at *6-8 (M.D. Pa. Nov. 19, 2012), *report and recommendation adopted*, No. 3:CV-12-0589, 2013 WL 298058 (M.D. Pa. Jan. 24, 2013); *In re Ogilvie*, 533 B.R. 460, 467 (Bankr. M.D. Pa. 2015); *In re Faust*, 353 B.R. 94, 100 (Bankr. E.D. Pa. 2006). Defendants also present uncontested evidence—in the form of an affidavit signed by a deputy with the Monroe County Sheriff's Office—that Plaintiff was served with a copy of the foreclosure complaint. (Doc. 20-2, at 32); *see* Pa.R.Civ. P. 1144(a) (providing that mortgagor and real owner of the property shall be named as defendants to a mortgage foreclosure action). Because Plaintiff neglected her opportunity to appear and contest the foreclosure proceedings, this Court concludes that she "lost" in state court. *See In re Knapper*, 407 F.3d at 584-85. Therefore, the first requirement under *Rooker–Feldman* is satisfied.

The second *Rooker–Feldman* requirement is that the injuries complained of in federal court must have been caused by the state court judgment. *Great W. Mining & Mineral Co.*, 615 F.3d at 166. In analyzing this requirement, the Third Circuit advises that "[a] useful

guidepost is the timing of the injury, that is, whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been 'caused by' those proceedings." *Great W. Mining & Mineral Co.*, 615 F.3d at 167. Here, Plaintiff clearly complains of the adverse state court mortgage foreclosure judgment and the potential sale of the Laurel Road Property set into motion by her default. (Doc. 1, at ¶ 162 ("Plaintiff requests that title to the Subject Property remain in her name and [the court] deem that the attempted sale of the Property is 'unlawful and void.' Additionally, Plaintiff . . . request[s] that the judgment rendered in the State case be voided . . . .")). Counts I and II of Plaintiff's complaint, the request for a declaratory judgment and action to quiet title, both complain of harm caused by the state court mortgage foreclosure action, as each seeks to establish Plaintiff's claim to the Laurel Road Property and enjoin BANA from asserting its rights to the Laurel Road Property under the Mortgage in light of the foreclosure judgment. (Doc. 1, at ¶¶ 176, 183-84).

Plaintiff's slander of title claim asserted in Count VIII of the complaint also complains of an injury caused by the foreclosure proceeding. (Doc. 1, at ¶¶ 217-223). Under Pennsylvania law, a litigant states a claim for slander of title where:

> (1) the statement is false; (2) the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss; (3) pecuniary loss does in fact result; and (4) the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity.
>
> *Pro Golf Mfg. v. Tribune Review Newspaper Co.*, 809 A.2d 243, 246 (Pa. 2002).

Here, Plaintiff alleges that BANA maliciously published "false and disparaging documents" including "the Notice of Default, and the documents evidencing the commencement of judicial foreclosure by a party who does not possess that right." (Doc. 1, at ¶¶ 218-223).

Given that the statements Plaintiff complains of were filings made by BANA in the course of litigating the foreclosure action, it necessarily follows that the pecuniary loss Plaintiff suffered as a result of those filings came from the foreclosure judgment itself. (Doc. 1, at ¶ 220 ("Plaintiff's title to the Property has been disparaged and slandered, and there is a cloud on Plaintiff's title")).

Accordingly, Counts I, II, and VIII of Plaintiff's complaint satisfy the second requirement under *Rooker-Feldman*.

The Court concludes that Plaintiff's remaining claims, however, were not caused by the state court proceedings. The alleged tort, contract, and RESPA violations stand independent of the foreclosure default judgment because the harm complained of with respect to all of these claims predated the foreclosure default judgment. For instance, Plaintiff's negligence, breach of the implied covenant of good faith and fair dealing, and breach of contract claims each assert that Plaintiff was harmed by Defendants' failure to notify her upon changes in ownership to the Note and Mortgage. (Doc. 1, at ¶¶ 188, 194, 214). At least one of those changes in ownership, an assignment from MERS to BANA on March 25, 2014, occurred several months before the initiation of the state court foreclosure action. (Doc. 1, at ¶ 82; Doc. 20-2, at 7-12). *See Conklin v. Anthou*, 495 F. App'x 257, 262 (3d Cir. 2012) ("[Plaintiff] is not prevented from otherwise attacking the parties to the foreclosure proceedings or alleging that the methods and evidence employed were the product of fraud or conspiracy, regardless of whether his success on those claims might call the veracity of the state-court judgments into question."). Because the majority of Plaintiff's claims do not betray a causal relationship between the alleged harms suffered and the state

court foreclosure proceeding, only Plaintiff's request for declaratory judgment, action to quiet title, and slander of title claims satisfy the second *Rooker-Feldman* requirement.

The third element of *Rooker-Feldman* requires the state court judgment to have been entered before the federal suit was filed. *Great W. Mining & Mineral Co.*, 615 F.3d at 166. Plaintiff claims that this requirement is not satisfied because Ventures Trust was substituted as plaintiff to the mortgage foreclosure judgment as the successor in interest to BANA on June 8, 2015, after Plaintiff initiated suit in federal court. (Doc. 7, at 2, 14-16). Plaintiff's argument must fail, as the identity of the specific prevailing creditor-plaintiff(s) to the state court foreclosure action is irrelevant to the *Rooker–Feldman* analysis, so long as Plaintiff was the losing party in state court. *See ITT Corp. v. Intelnet Int'l*, 366 F.3d 205, 216 n.18 (3d Cir. 2004) ("[W]e have never deemed *Rooker–Feldman* inapplicable based on the non-participation in state court of a party asserting the jurisdictional bar."). Here, the state court judgment was clearly entered before the instant federal suit was filed, as Plaintiff explicitly asks "that the judgment rendered in the State case be voided" as part of her federal complaint. (Doc. 1, at ¶ 162). Specifically, judgment was rendered when the Monroe County Court of Common Pleas prothonotary entered a default judgment against Plaintiff on July 22, 2014, over ten months before Plaintiff filed the instant federal complaint. (Doc. 1; Doc. 20-2, at 29-30, 35-37, 41-42). The third *Rooker–Feldman* requirement is thus satisfied.

The fourth and final requirement under *Rooker–Feldman* is that the plaintiff must invite the federal court to review and reject the state court's judgment. *Great W. Mining & Mineral Co.*, 615 F.3d at 166. This requirement is "closely related" although not identical to the second prong of the *Rooker–Feldman* analysis. *Great W. Mining & Mineral Co.*, 615 F.3d at 168. "Prohibited appellate review 'consists of a review of the proceedings already conducted

by the 'lower' tribunal to determine whether it reached its result in accordance with law.'" *Great W. Mining & Mineral Co.*, 615 F.3d at 169 (quoting *Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1143 (10th Cir. 2006)). In her complaint, Plaintiff clearly invites this Court to overturn the default judgment entered in the Monroe County Court of Common Pleas. (Doc. 1, at ¶ 162 ("Plaintiff requests that title to the Subject Property remain in her name and [the court] deem that the attempted sale of the Property is 'unlawful and void.' Additionally, Plaintiff . . . request[s] that the judgment rendered in the State case be voided . . . .")). However, while the relief requested in Counts I, II, and VIII of the complaint would require this Court to invalidate the state court default judgment, Plaintiff's other claims could be granted while leaving the judgment intact. *Compare Laychock v. Wells Fargo Home Mortg.*, No. CIV.A.07-4478, 2008 WL 2890962, at *4 (E.D. Pa. July 23, 2008) ("I would have to invalidate the state default judgment in order to rule [mortgagees] 'maliciously represented' [mortgagor-plaintiff's] interest in her property [in order to grant slander of title claim]."), *aff'd*, 99 F. App'x 716 (3d Cir. 2010), *with Hersh v. CitiMortgage, Inc.*, 16 F. Supp. 3d 566, 572 (W.D. Pa. 2014) ("[I]f [the district court] determined that Plaintiffs were not in default . . . , the Fayette County Court of Common Pleas decision to permit the foreclosure action to proceed would rest on shaky grounds. But . . . granting the relief requested would not undo that court's judgment."). Accordingly, the fourth *Rooker–Feldman* requirement is satisfied only with respect to Plaintiff's request for declaratory judgment, her quiet title action, and her slander of title claim.

It is therefore recommended that Counts I, II, and VIII each be dismissed for lack of jurisdiction pursuant to *Rooker–Feldman*.

### B. RES JUDICATA BARS PLAINTIFF'S FRAUD CLAIM

Defendants next contend that Plaintiff should be barred from asserting her remaining claims under the doctrine of res judicata, also known as claim preclusion. (Doc. 23, at 5-6; Doc. 24, at 10-11). The Full Faith and Credit statute requires federal courts to give a state court ruling the same effect as the ruling would receive within the issuing state. 28 U.S.C. § 1738; *Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir. 1988). Under Pennsylvania law, the doctrine of res judicata "provides that where there is a final judgment on the merits, future litigation between the parties on the same cause of action is prohibited." *McGill v. Southwark Realty Co.*, 828 A.2d 430, 435 (Pa. Commw. Ct. 2003). The Supreme Court of Pennsylvania also has made clear that "judgment by default is *res judicata* and quite as conclusive as one rendered on a verdict after litigation insofar as a defaulting defendant is concerned."[5] *Fox v. Gabler*, 626 A.2d 1141, 1143 (Pa. 1993) (citing *Zimmer v. Zimmer*, 326 A.2d 318, 320 (Pa. 1974)). Furthermore, "[r]es judicata applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action." *Balent v. City of Wilkes-Barre*, 669 A.2d 309, 313 (Pa. 1995). A subsequent claim is barred by the doctrine of res judicata based on an earlier proceeding in a Pennsylvania court where the two actions share the following four conditions: (1) the thing sued upon or for; (2) the cause of action; (3) the persons and parties to the action; and (4) the capacity of the parties to sue or be sued. *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 548 (3d Cir. 2006).

---

[5] In contrast, "default judgments are not given preclusive effect in Pennsylvania's courts" for the purposes of collateral estoppel, also known as issue preclusion. *In re Graves*, 33 F.3d 242, 248 (3d Cir. 1994). Accordingly, collateral estoppel does not present a jurisdictional bar to Plaintiff's claims.

In this case, the first, third, and fourth requirements are satisfied. Both actions sought a determination of Plaintiff's rights and obligations under the Note and Mortgage on the Laurel Road Property. Furthermore, both actions share an identity of parties because "[t]he doctrine of res judicata applies to and is binding, not only on actual parties to the litigation, but also to those who are in privity with them." *Stevenson v. Silverman*, 208 A.2d 786, 788 (Pa. 1965). Because all Defendants named to this action are in privity with each other, it is of no matter that some of the Defendants were not parties to the state court foreclosure proceeding. *See Coggins v. Carpenter*, 468 F. Supp. 270, 280 (E.D. Pa. 1979) ("Res judicata operates to bar a subsequent action . . . even though the subsequent action names fewer or more parties than the previous action."). The capacity of the parties to sue or be sued is also identical in the two actions. The Court therefore must determine whether the lone remaining condition for res judicata is also satisfied.

The second requirement for a claim to be barred under res judicata—that the two proceedings share the same cause of action, presents a significantly closer call. In regard to the second requirement, "Pennsylvania courts have held that the mere advancement of a different legal theory does not necessarily give rise to a different cause of action." *Turner*, 449 F.3d at 549 (citing *McArdle v. Tronetti*, 627 A.2d 1219, 1222 (Pa. Super. Ct. 1993)). Specifically, "[a]s to the identity of cause of action, rather than resting on the specific legal theory invoked, *res judicata* generally is thought to turn on the essential similarity of the underlying events giving rise to various legal claims." *In re Jones & Laughlin Steel Corp.*, 477 A.2d 527, 531 (Pa. Super. Ct. 1984).

Pennsylvania mortgage foreclosure actions are narrowly construed. *See N.Y. Guardian Mortg. Corp. v. Dietzel*, 524 A.2d 951, 953 (Pa. Super. Ct. 1987) ("An action in

mortgage foreclosure is strictly an *in rem* proceeding, and the purpose of a judgment in mortgage foreclosure is solely to effect a judicial sale of the mortgaged property."). A defendant to a mortgage foreclosure action thus may only bring "a counterclaim which arises from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose." Pa. R. Civ. P. 1148. Pennsylvania courts interpret this rule as permitting "only those counterclaims . . . that are part of or incident to the creation of the mortgage relationship itself." *Cunningham v. McWilliams*, 714 A.2d 1054, 1057 (Pa. Super. Ct. 1998). Thus, although *in personam* claims generally may not be asserted in an *in rem* mortgage foreclosure action, "Rule 1148, which allows a defendant to assert a contractual counterclaim arising out of a mortgage transaction against the mortgagee, constitutes the only exception to this rule." *Signal Consumer Disc. Co. v. Babuscio*, 390 A.2d 266, 270 (Pa. Super. Ct. 1978).

Here, Counts III, IV, and VII of Plaintiff's complaint all assert different theories of recovery based on Defendants' failure to notify Plaintiff of changes in ownership of the Note and Mortgage. (Doc. 1, at ¶¶ 186, 194, 214). However, Plaintiff does not claim that any changes in ownership occurred before the March 25, 2014 assignment from MERS to BANA (Doc. 1, at ¶ 82), at which time Plaintiff allegedly had already been in default on her Mortgage payments for several months. (Doc. 20-2, at 7-12). Because the first assignment occurred *after* Plaintiff allegedly defaulted, any improprieties with the Mortgage and Note assignments cannot be part of or incident to the creation of the Mortgage. *Chrysler First Bus. Credit Corp. v. Gourniak*, 601 A.2d 338, 342 (Pa. Super. Ct. 1992). Likewise, Plaintiff's RESPA claim in Count V of her complaint alleges that BOFA and BSI accepted unspecified charges "for the rendering of real estate services which were in fact charges for other than

services actually performed . . . ." (Doc. 1, at ¶ 199). A claim involving these purportedly unearned fees also is not part of or incident to the creation of the Mortgage itself. *See Cunningham*, 714 A.2d at 1057 ("Rule 1148 does not permit a counterclaim arising from a contract related to the mortgage, such as a contract for sale of real property."); *Mellon Bank, N.A. v. Joseph*, 406 A.2d 1055, 1060 (Pa. Super. Ct. 1979) ("Here, the counterclaims appellant seeks to assert are remedial; they arose once the mortgage was in default, but were not part of, or incident to, the creation of the mortgage itself."). Counts III, IV, V, and VII thus could not have been asserted before the Monroe County Court of Common Pleas, and do not share an identity of cause of action with the mortgage foreclosure proceeding. *See In re Faust*, 353 B.R. 94, 102-03 (Bankr. E.D. Pa. 2006) (rejecting res judicata argument in regard to RESPA and other claims because none of the claims could have been brought in response to earlier mortgage foreclosure action).

Plaintiff also asserts a fraud claim in Count VI of her complaint. (Doc. 1, at ¶¶ 202-210). As noted by Ventures Trust and BSI in their motion to dismiss, "fraud in the concealment" is not a recognized tort. The Court instead construes Count VI of Plaintiff's complaint as alleging fraud in the inducement, as Plaintiff states that Defendants' "failure to disclose the material terms of the transaction induced Plaintiff to enter into the loan and accept the [s]ervices as alleged herein." (Doc. 1, at ¶¶ 207). Fraud in the inducement to a mortgage is a cognizable counterclaim in a foreclosure action under Pennsylvania law, as it directly concerns the creation of the mortgage relationship. *Cunningham*, 714 A.2d at 1057; *Green Tree Consumer Disc. Co. v. Newton*, 909 A.2d 811, 814 (Pa. Super. Ct. 2006) ("Fraud in the inducement of the mortgage is clearly a permissible counterclaim under Rule 1148.");

*Indymac Bank F.S.B. v. Vicuna*, 83 Pa. D. & C.4th 129, 133 (Monroe Cnty. Ct. Com. Pl. 2007) ("What Rule 1148 *does* allow is a counterclaim of fraud in the inducement of the purchase of the *mortgage itself* . . . .") (emphasis in original). Plaintiff could have asserted her fraud claim as a counterclaim in the mortgage foreclosure proceeding because they both arose from the same underlying event, namely, the creation of the Mortgage agreement. Accordingly, the second requirement under Pennsylvania preclusion law, a shared cause of action, is met only with respect to Count VI of Plaintiff's complaint. *See generally Moncrief v. Chase Manhattan Mortg. Corp.*, 275 F. App'x 149, 153-54 (3d Cir. 2008) (precluding plaintiff-mortgagor in federal court from asserting fraud claim and challenging mortgagee's standing to bring foreclosure action where plaintiff-mortgagor could have raised these claims during foreclosure proceeding but failed to do so).

It is therefore recommended that only Plaintiff's fraud claim asserted as Count VI of her complaint be dismissed under the doctrine res judicata.

### C.   RESPA CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

Defendants next contend that Plaintiff's RESPA claims against BANA and BSI must fail because they are barred by the statute of limitations. (Doc. 23, at 12-13; Doc. 24, at 12). The applicable limitations periods for claims brought under RESPA is found in 12 U.S.C. § 2614, which provides:

> Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred, within 3 years in the case of a violation of section 2605 of this title and 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation . . . .

12 U.S.C. § 2614.

In her complaint, Plaintiff specifies that she asserts her RESPA claims under § 2607, so a 1-year limitations period applies to those claims. (Doc. 1, at ¶ 199); 12 U.S.C. § 2614. The Third Circuit interprets the phrase "from the date of the occurrence of the violation" found in § 2614 as providing that the statute of limitations begins to run from the date the loan closed. *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 281 (3d Cir. 2010), *as amended* (Oct. 20, 2010). Here, Plaintiff's loan closed on or about September 2, 2005. (Doc. 1, at ¶ 28). Accordingly, the limitations period for Plaintiff to assert a RESPA claim expired in 2006. Because Plaintiff did not allege her RESPA claim until filing the instant suit in June of 2015, her claim is untimely. (Doc. 1).

Plaintiff seeks to circumvent the applicable statute of limitations by stating that she only recently learned of Defendants' actions. (Doc. 1, at ¶ 201). The Court construes Plaintiff's statement as an invocation of the discovery rule, "which tolls the limitations period until the plaintiff learns of his cause of action or with reasonable diligence could have done so . . . ." *William A. Graham Co. v. Haughey*, 646 F.3d 138, 141 (3d Cir. 2011). However, "[t]he discovery rule . . . has no applicability to RESPA claims." *Macauley v. Estate of Nicholas*, 7 F. Supp. 3d 468, 489 (E.D. Pa. 2014). Furthermore, a plaintiff may not benefit from either the discovery rule or the doctrine of equitable tolling unless that plaintiff acts with "reasonable diligence."[6] *Haughey*, 646 F.3d at 141. A plaintiff demonstrates

---

[6] Plaintiff has not invoked equitable tolling in this case. "[T]o benefit from the equitable tolling doctrine, plaintiffs have the burden of proving three necessary elements: (1) that the defendant actively misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of her claim within the limitations period; and (3) where plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts." *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 509 (3d Cir. 2006).

reasonable diligence by establishing "that he pursued the cause of his injury with those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380, 403 (3d Cir. 2015) (quoting *Mest v. Cabot Corp.,* 449 F.3d 502, 511 (3d Cir. 2006)). Here, Plaintiff's failure to appear before the Monroe County Court of Common Pleas to litigate the foreclosure action, coupled with her failure to file the instant federal action until a year after the foreclosure proceeding began, demonstrates that she has not pursued the cause of her injuries with the reasonable diligence required to protect her own interests. (Doc. 20-2, at 29-30). Accordingly, Plaintiff cannot avail herself of either the discovery rule or equitable tolling.

It is therefore recommended that Plaintiff's RESPA claims be denied as barred under the applicable statute of limitations.

### D.  PLAINTIFF'S NEGLIGENCE CLAIM IS TIMELY

Ventures Trust and BSI also argue that Plaintiff's negligence claim asserted as Count III of her complaint is untimely. (Doc. 24, at 12-13). Because negligence is a state law claim, the Court looks to Pennsylvania law for the applicable statute of limitations in regard to this claim. *Mest,* 449 F.3d at 510. Pennsylvania provides a 2-year limitations period to assert a negligence claim. 42 Pa. Cons. Stat. § 5524(7). This period begins to run upon "the occurrence of the final significant event necessary to make the claim suable." *Mack Trucks, Inc. v. Bendix-Westinghouse Auto. Air Brake Co.*, 372 F.2d 18, 20 (3d Cir. 1966). There are four elements that a plaintiff must demonstrate to establish a negligence claim: "(1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) a causal relationship between the breach and the resulting injury suffered by the plaintiff; and (4)

actual loss suffered by the plaintiff." *Mahan v. Am-Gard, Inc.*, 841 A.2d 1052, 1058 (Pa. Super. Ct. 2003). Accordingly, the limitations period on a negligence claim does not begin to run until the plaintiff suffers actual harm. *Gleason v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2011) ("Generally, a statute of limitations period begins to run when a cause of action accrues; *i.e.,* when an injury is inflicted and the corresponding right to institute a suit for damages arises.").

Here, although Plaintiff's theory of negligence is not entirely clear, she appears to assert a claim based on the harm caused by the assignment of the Note and Mortgage. (Doc. 1, at ¶ 188). The first assignment of the Note and Mortgage is alleged to have taken place between MERS and BANA on March 25, 2014. (Doc. 1, at ¶ 82). Because Plaintiff does not allege any harm suffered before this assignment, March 25, 2014 is the earliest possible date on which her claim accrued. *See Gleason*, 15 A.3d at 484. Accordingly, the 2-year limitations period had not lapsed when Plaintiff filed the instant action in June of 2015. (Doc. 1). It is therefore recommended that Plaintiff's negligence claim be examined on its merits.

### E.  NONE OF PLAINTIFF'S REMAINING CLAIMS STATE A VALID CLAIM

As discussed above, the Court recommends that it has jurisdiction over three of the eight claims asserted in Plaintiff's complaint: the claim of negligence *per se* asserted as Count III, the breach of covenant of good faith and fair dealing asserted as Count IV, and the breach of contract asserted as Count VII. Defendants argue that Plaintiff fails to state a claim in respect to each of these claims. (Doc. 23, at 9-11; Doc. 24, at 14).

#### 1.  Negligence *Per Se*

Defendants assert that Plaintiff's claim of negligence *per se* must fail because she has not pled the proper requirements to sustain the claim. As noted above, a properly-pled

negligence claim must demonstrate: "(1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) a causal relationship between the breach and the resulting injury suffered by the plaintiff; and (4) actual loss suffered by the plaintiff." *Mahan*, 841 A.2d at 1058. Pennsylvania courts define negligence *per se* as "conduct, whether of action or omission, which may be declared and treated as negligence without any argument or proof as to the particular surrounding circumstances." *Mahan*, 841 A.2d at 1059 (quoting *Wagner v. Anzon, Inc.*, 684 A.2d 570, 574 (Pa. Super. Ct. 1996)) (emphasis omitted). A plaintiff may assert a claim under the theory of negligence *per se* to "establish[ ] the elements of duty and breach of duty where an individual violates an applicable statute, ordinance, or regulation designed to prevent a public harm." *Mahan*, 841 A.2d at 1058. However, Pennsylvania courts recognize that negligence *per se* applies only if the following requirements are met:

(1) The purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally;

(2) The statute or regulation must clearly apply to the conduct of the defendant;

(3) The defendant must violate the statute or regulation;

(4) The violation of the statute or regulation must be the proximate cause of the plaintiff's injuries.

*Wagner*, 684 A.2d at 574.

In her complaint, Plaintiff fails to name the specific statutes or rules that Defendants allegedly violated. (Doc. 1, at ¶ 187 ("Defendants' actions and ongoing behavior are and have been in direct violation of federal and state statutes, rules and regulations and accordingly constitute negligence per se.")). Because Plaintiff does not set forth any particular statute or rule that has been violated, the Court cannot determine that any of the four requirements of negligence *per se* have been satisfied. *See Wagner*, 684 A.2d at 574.

Without the benefit of negligence *per se*, Plaintiff fails to establish the elements of duty and breach of duty needed to sustain a negligence claim.  *See Mahan*, 841 A.2d at 1058.

It is therefore recommended that Plaintiff's negligence claim asserted as Count III of her complaint be dismissed for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[7]

### 2.  Contract Claims

Plaintiff alleges two claims sounding in contract: breach of covenant of good faith and fair dealing asserted as Count IV, and breach of contract asserted as Count VII. As BANA and MERS note, however (Doc. 23, at 10-11), Pennsylvania does not recognize an independent cause of action for a breach of the covenant of good faith and fair dealing. *Hanaway v. Parkesburg Grp., LP*, 2015 PA Super 263, 2015 WL 9261244, at *9 (Dec. 15, 2015) ("[A] breach of the covenant of good faith and fair dealing is a breach of contract action, not an independent action for breach of a duty of good faith.") (citing *LSI Title Agency, Inc. v. Evaluation Servs., Inc.*, 951 A.2d 384, 391 (Pa. Super. Ct. 2008)). Although it is not an independent cause of action, "the duty to act in good faith and deal fairly infuses the parties' performance of their express contractual obligations." *Hanaway*, 2015 PA Super 263,

---

[7] Defendants also assert that Plaintiff's negligence claim should be dismissed pursuant to the economic loss doctrine. (Doc. 23, at 9-10; Doc. 24, at 14). The economic loss doctrine provides that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." *Excavation Techs., Inc. v. Columbia Gas Co. of Pa.*, 985 A.2d 840, 841 n.3 (Pa. 2009) (quoting *Adams v. Copper Beach Townhome Comtys., L.P.*, 816 A.2d 301, 305 (Pa. Super. Ct. 2003)). Because Plaintiff's theory of negligence is less than clear, the Court cannot readily ascertain whether Plaintiff solely pleads "economic damages unaccompanied by physical injury or property damage." *Excavation Techs., Inc.*, 985 A.2d at 841 n.3. The Court thus withholds consideration of whether the economic loss doctrine bars Plaintiff's negligence claim at this time, but invites Defendants to re-raise this argument should Plaintiff choose to file an amended complaint that includes a negligence claim.

2015 WL 9261244, at *9 ("In determining whether there has been a breach of contract, we evaluate the conduct of a party through the lens of good faith and fair dealing."). A plaintiff must allege three elements to establish a breach of contract claim under Pennsylvania law: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 182 (3d Cir. 2015) (quoting *Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. Ct. 2004)), *cert. denied sub nom. Urden Law Offices, P.C. v. Kaymark*, No. 15-216, 2016 WL 100370 (U.S. Jan. 11, 2016).

Plaintiff asserts that all Defendants breached the terms of the Note and Mortgage agreement "by failing to notify Plaintiff of the change in ownership of the Note and Mortgage . . . ." (Doc. 1, at ¶ 214). BANA and MERS, on the other hand, argue that Plaintiff's claim must fail because she admits that BANA responded to her Qualified Written Request ("QWR") on or about September 3, 2014, in which BANA acknowledged that it held both the Note and the Mortgage. (Doc. 1, at ¶ 41; Doc. 23, at 10-11). Without more information regarding the specific terms of the Defendants' notification obligations under the Mortgage agreement, the Court is unable to determine whether BANA's QWR response satisfied its obligations under the Mortgage. It is also unclear who specifically has the obligation to inform Plaintiff of a change in ownership to the Note and Mortgage, how this notification is supposed to be made, and which of the several assignments of the Note and Mortgage Plaintiff asserts this claim in respect to.  Lastly, Plaintiff also fails to state how any damages she suffered were a result of Defendants' breach in failing to notify her of changes in ownership of the Note and Mortgage. *See James Corp. v. N. Allegheny Sch. Dist.*, 938 A.2d 474, 498 (Pa. Commw. Ct. 2007) ("To prove breach of contract, School District

must show Architect breached a duty imposed by the contract and such breach proximately caused Contractor's damages."). The Court therefore concludes that Plaintiff has failed to plead the elements of a valid breach of contract claim.

Accordingly, it is recommended that Plaintiff's claim for breach of contract be dismissed for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### IV. LEAVE TO AMEND

The Third Circuit has instructed that district courts generally must permit a curative amendment if a complaint filed *pro se* is vulnerable to dismissal for failure to state a claim, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). As such, it is recommended that Plaintiff be directed to file one amended complaint that is complete in all respects. An amended complaint must be a pleading that stands by itself without reference to the original complaint. *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992). The amended complaint should specify the claims Plaintiff wishes to bring, which defendants she wishes to allege each claim against, and the specific facts that show each Defendant's liability for each claim. *Boyd v. New Jersey Dep't of Corr.*, 583 F. App'x 30, 32 (3d Cir. 2014) *cert. denied*, 135 S. Ct. 2374 (2015).

With respect to Plaintiff's tort claim asserted in Count III of her complaint, Plaintiff must specify the duty owed to her, breach of duty, harm that resulted, and the causal relationship between the breach and the ensuing harm. As to the breach of contract claim asserted in Count VII of her complaint, Plaintiff must specify the terms of the Mortgage agreement that imposed a duty on Defendants, how Defendants breached that contractual duty, and how the breach resulted in damages to Plaintiff. However, the Court does not

recommend granting leave with respect to Counts I, II, VI and VIII of Plaintiff's complaint because each of these claims are barred on jurisdictional grounds. The Court likewise recommends that Plaintiff be denied leave to amend her RESPA claim because it is barred by the statute of limitations. Lastly, although the Court does not recommend that Plaintiff be given leave to amend her breach of the covenant of good faith and fair dealing claim because it is not an independent cause of action, she may incorporate evidence of Defendants' bad faith to support a breach of contract claim in her amended complaint.

## V. RECOMMENDATION

Based on the foregoing, it is recommended that:

1. Defendants' motions to dismiss (Doc. 20; Doc. 22) be **GRANTED**;

2. Plaintiff's tort and breach of contract claims asserted as Counts III and VII of her complaint be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6);

3. Plaintiff's request for declaratory judgment, quiet title action, slander of title claim, and fraud claim, asserted as Counts I, II, VI, and VIII of her complaint, be **DISMISSED WITH PREJUDICE** for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1);

4. Plaintiff's RESPA and breach of the covenant of good faith and fair dealing claims asserted as Counts IV and V of her complaint be **DISMISSED WITH PREJUDICE** for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6);

5. Plaintiff be given thirty (30) days leave to amend her complaint and re-assert her remaining claims in accordance with Rule 8(d)(1) of the Federal Rules of Civil Procedure; and

6. The matter be remanded to the undersigned for further proceedings.

BY THE COURT:

Dated: January 22, 2016

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

LORRAINE PAGANO,

              Plaintiff,

   v.

VENTURES TRUST 2013-I-HR, et al.,

              Defendants.

CIVIL ACTION NO. 3:15-CV-01489

(CAPUTO, J.)
(MEHALCHICK, M.J.)

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **January 22, 2016**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: **January 22, 2016**

                     *s/ Karoline Mehalchick*
                     **KAROLINE MEHALCHICK**
                     **United States Magistrate Judge**